## SUNNY VALLEY WINERY, Inc., v. BERKSHIRE et al.

### No. 8, Docket 19862.

Circuit Court of Appeals, Second Circuit.

Feb. 7, 1947.

Gabriel Rubino, of New York City, for petitioner-appellant.

Herbert Borkland, Sp. Asst. to Atty. Gen. (Wendell Berge, Asst. Atty. Gen., on the brief), for respondents-appellees.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Petitioner attacks as unsupported by substantial evidence an order of the Deputy Commissioner of the Bureau of Internal Revenue suspending its Wine Producer's and Blender's Basic Permit for having shipped in interstate commerce carbonated wine falsely branded as champagne and sparkling burgundy.[1] Carbonated wine is produced very rapidly by injecting carbon dioxide gas directly into bottles of still wine; in champagne, made from white wine, and sparkling burgundy, made from red wine, carbon dioxide is produced solely by the time-consuming natural process of secondary fermentation of still wine to which yeast and sugar have been added. No chemical tests exist by which carbonated wine can be distinguished from these sparkling wines, and it appears doubtful

[1] Petitioner's permit was issued, as all permits are, conditionally upon compliance with §§ 5 and 6 of the Federal Alcohol Administration Act, 27 U.S.C.A. §§ 205, 206, Sec. 4(e) of this Act, 27 U.S.C.A. § 204(e), provides for suspension of permits for violation of any of the conditions thereof, and for revocation in the case of repeating offenders. Sec. 5(e) makes it unlawful to ship in interstate commerce wines not labeled in conformity with regulations promulgated by the Secretary of the Treasury. Under this authorization the Secretary has promulgated the regulations here involved setting standards of identity for champagne, including sparkling burgundy, and for carbonated wine, 27 CFR §§ 4.20, 4.21(b), 4.21(c), and requiring labeling in accordance with these standards. 27 CFR §§ 4.30, 4.34, 4.39(a). Petitioner's permit had been suspended on a previous occasion for a similar offense, on a stipulation in which petitioner admitted misbranding "for the purpose of these proceedings and these proceedings only." The hearing officer in this case recommended revocation of the petitioner's permit, and the District Supervisor of the Alcohol Tax Unit, Bureau of Internal Revenue, so ordered. But the Deputy Commissioner, construing the stipulation most narrowly in his application of § 4(e), reduced the penalty to a six months' suspension.

whether even connoisseurs can distinguish the products by taste. Nevertheless champagne.and sparkling burgundy command a much higher price than carbonated wine, partially because of their much higher production costs. Most of petitioner's wine is sold in an interstate market.

Petitioner's records covering the period from October 29, 1943, to March 23, 1944, indicated that it produced about 5,000 gallons of champagne and sparkling burgundy, and only about 44 gallons of carbonated wine. Nevertheless, during this period petitioner purchased and consumed eight cylinders of carbon dioxide, an amount sufficient to carbonate about 5,480 gallons of wine—more than its combined production of sparkling and carbonated wines. The explanation by petitioner's manager that the gas was consumed in the attempted repair of a newly purchased carbonating machine was properly disbelieved by the hearing officer. Whatever inherent plausibility the explanation might otherwise have had was greatly diminished by the fact that petitioner had attempted to conceal its possession of such large quantities of gas. The attempt to conceal was shown by the fact that petitioner's agents often refused to sign receipts for the delivery of cylinders of carbon dioxide, that petitioner kept the cylinders in a bathroom, and that an invoice covering the purchase of two cylinders disappeared from petitioner's files between visits of a government inspector.

On March 24, 1944, a government inspector visiting petitioner's plant observed some of petitioner's employees carbonating white wine and others close by labeling bottles as champagne. Near these latter stood a number of cases containing bottles already labeled as champagne. At the close of the day's business the bottles which the inspector had seen being carbonated, a number almost twice the petitioner's entire production of carbonated wine for the previous five months, were entered on petitioner's records as carbonated wine. Suspecting misbranding, the inspector checked petitioner's records and found a large number of bottles of champagne listed as having been put in production two days previous. Petitioner's manager was unable to point these bottles out to the inspector; the bottles he did point out were proved chemically not to contain champagne in production; and his explanations concerning them were shown to be misrepresentations. This evidence strongly indicates that the inspector caught petitioner's employees red-handed in the act of misbranding and that the nonexistent champagne was recorded as being in production to cover contemplated sales of the misbranded carbonated wine as champagne. In view of petitioner's previous production records the inference might properly be drawn that this was not an unusual practice. During the period from October, 1943, to March, 1944, when petitioner's records showed production of sparkling wines almost exclusively, petitioner was being visited only infrequently by government inspectors. After March 24, government inspectors visited petitioner's plant almost daily; during this time petitioner produced about 1,500 gallons of carbonated wine and absolutely no champagne or sparkling burgundy.

■ During November and December, 1943, petitioner shipped in interstate commerce a large quantity of wine labeled champagne, which, according to petitioner's records, was produced in from 18 to 29 days. Reliable experts testified, however, that champagne which has been in production less than three months is cloudy in appearance and therefore not marketable. From this testimony the hearer properly drew the inference that the wine shipped was actually misbranded carbonated wine. In the state of the evidence the hearing officer was not required to adjourn the hearing for an 18 days' test of petitioner's asserted ability to produce marketable champagne that quickly.

■ The Act, in providing an appeal to this court, states that "the finding of the Secretary as to the facts, if supported by substantial evidence, shall be conclusive." 27 U.S.C.A. § 204(h). Here the report of the hearing officer, accepted by the District Supervisor and the Deputy Commissioner, is full, fair, and highly persuasive, and the evidence is more than substantial. Indeed, so compelling is the evidence that it is difficult to see what purpose this appeal could

serve except to delay execution of the order. In this it appears to have had some success, for the events here reviewed happened three years ago.

Affirmed.